**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| LIGHTNING FITNESS SYSTEMS LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 24-012-RGA |
| | ) | |
| PRECOR INCORPORATED and | ) | |
| PELOTON INTERACTIVE, INC., | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANTS' OPENING BRIEF IN SUPPORT OF THEIR
MOTION TO DISMISS UNDER RULE 12(b)(6)**

Karen E. Keller (No. 4489)
Lindsey M. Gellar (No. 7202)
SHAW KELLER LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 298-0700
kkeller@shawkeller.com
lgellar@shawkeller.com
*Attorneys for Defendants Precor
Incorporated and Peloton Interactive,
Inc.*

OF COUNSEL:
Benjamin A. Saidman
FINNEGAN, HENDERSON, FARABOW,
 GARRETT & DUNNER LLP
271 17th Street, NW, Suite 1400
Atlanta, GA 30363
(404) 653-6510

Anand K. Sharma
FINNEGAN, HENDERSON, FARABOW,
 GARRETT & DUNNER LLP
901 New York Avenue, NW
Washington, DC 20001-4413
(202) 408-4000

Deanna C. Smiley
FINNEGAN, HENDERSON, FARABOW,
 GARRETT & DUNNER LLP
1875 Explorer Street, Suite 800
Reston, VA 20190-6023
(571) 203-2700

Dated: May 6, 2024

# TABLE OF CONTENTS

I.     INTRODUCTION ...................................................................................................1

II.    NATURE AND STAGE OF PROCEEDINGS ....................................................2

III.   STATEMENT OF THE FACTS ..........................................................................3

     A.    Defendants Peloton and Precor Are Leaders in the Fitness Industry......................3

     B.    The '285 Patent Is Directed to a Method or Apparatus of Receiving Sensory Information While Operating an Exercise Machine ..................................3

IV.   LEGAL STANDARD AS TO 35 U.S.C. § 101 ..................................................5

V.    ARGUMENT ........................................................................................................7

     A.    The '285 Patent Is Ineligible Under 35 U.S.C. § 101 ...............................................7

           1.    *Alice* Step One: Claim 1 Is Directed to an Abstract Idea............................8

                a.    Claim 1 Is Directed to Collecting Information, Analyzing That Information, and Displaying That Information................................8

                b.    Courts Have Routinely Found That Collecting Information, Analyzing That Information, and Displaying That Information Is an Abstract Idea ........................................................................9

                c.    Plaintiff's Contentions in the Complaint Do Not Alter the Analysis....................................................................................12

           2.    *Alice* Step Two: Claim 1 Includes No Inventive Concept ........................13

                a.    Claim 1 Recites Only Conventional Components Used in Routine Ways................................................................................14

                b.    Plaintiff's Contentions in the Complaint Do Not Alter the Analysis....................................................................................15

            3.    The Other Claims of the '285 Patent Are Likewise Ineligible .................16

     B.    Amendment to the Complaint Would Be Futile ..................................................17

VI.   CONCLUSION..................................................................................................18

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alice Corp. v. CLS Bank Int'l,*
573 U.S. 208 (2014)............................................................................2, 5, 6

*Amdocs (Isr.) Ltd. v. Openet Telecom, Inc.,*
841 F.3d 1288 (Fed. Cir. 2016)...................................................................5-6

*Arunachalam v. Kronos Inc.,*
No. 14-cv-00091-RGA, 2021 WL 1174530 (D. Del. Mar. 29, 2021) ......................8

*Athena Diagnostics, Inc. v. Mayo Collaborative Servs., LLC,*
915 F.3d 743 (Fed. Cir. 2019)....................................................................6

*Berkheimer v. HP Inc.,*
881 F.3d 1360 (Fed. Cir. 2018)...................................................................7

*Bilski v. Kappos,*
561 U.S. 593 (2010).............................................................................6

*Cambridge Mobile Telematics, Inc. v. Zendrive, Inc.,*
No. 22-1260-RGA, 2023 WL 6295338 (D. Del. Sept. 27, 2023).........................11

*CardioNet, LLC v. InfoBionic, Inc.,*
816 F. App'x 471 (Fed. Cir. 2020) ..............................................................9

*CardioNet, LLC v. InfoBionic, Inc.,*
955 F.3d 1358 (Fed. Cir. 2020)...................................................................5

*Cleveland Clinic Found. v. True Health Diagnostics LLC,*
760 F. App'x 1013 (Fed. Cir. 2019) ...........................................................17

*Cleveland Clinic Found. v. True Health Diagnostics LLC,*
859 F.3d 1352 (Fed. Cir. 2017)...................................................................7

*Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat'l Ass'n,*
776 F.3d 1343 (Fed. Cir. 2014)..........................................................7, 16, 17

*Electric Power Group, LLC v. Alstom S.A.,*
830 F.3d 1350 (Fed. Cir. 2016)........................................................... *passim*

*Enfish, LLC v. Microsoft Corp.,*
822 F.3d 1327 (Fed. Cir. 2016)...............................................................6, 12

*Finjan, Inc. v. Blue Coat Sys., Inc.*,
   879 F.3d 1299 (Fed. Cir. 2018)................................................................6

*iLife Technologies, Inc. v. Nintendo of America, Inc.*,
   839 F. App'x 534 (Fed. Cir. 2021) ...........................................................10

*Int'l Bus. Machs. Corp. v. Zillow Grp., Inc.*,
   50 F.4th 1371 (Fed. Cir. 2022) ................................................................16

*Intell. Ventures I LLC v. Cap. One Bank (USA)*,
   792 F.3d 1363 (Fed. Cir. 2015)............................................................8, 15

*Intell. Ventures I LLC v. Symantec Corp.*,
   838 F.3d 1307 (Fed. Cir. 2016)................................................................6

*Mad Dogg Athletics, Inc. v. Peloton Interactive, Inc.*,
   No. 2:20-CV-00382-JRG, 2021 WL 4206175 (E.D. Tex. Sept. 15, 2021) ...................... 11-12

*Mayo Collaborative Servs. v. Prometheus Lab'ys, Inc.*,
   566 U.S. 66 (2012)..................................................................................6

*Peoplechart Corp. v. Wintrust Bank, N.A.*,
   543 F. Supp. 3d 594 (N.D. Ill. 2021) .......................................................18

*Pers. Beasties Grp. LLC v. Nike, Inc.*,
   341 F. Supp. 3d 382 (S.D.N.Y. 2018), *aff'd*, 792 F. App'x 949
   (Fed. Cir. 2020)....................................................................................12

*Philips North America LLC v. Fitbit LLC*,
   626 F. Supp. 3d 292 (D. Mass. 2022) ......................................................10

*PlanetID, LLC v. Digify, Inc.*,
   No. 19-cv-04615-JST, 2021 WL 567371 (N.D. Cal. Jan. 12, 2021) ......................15

*SAP Am., Inc. v. InvestPic, LLC*,
   898 F.3d 1161 (Fed. Cir. 2018)................................................................5

*Simio, LLC v. FlexSim Software Prods., Inc.*,
   983 F.3d 1353 (Fed. Cir. 2020)...............................................................16

*SkinMedica, Inc. v. Histogen Inc.*,
   727 F.3d 1187 (Fed. Cir. 2013)................................................................5

*SmarTEN LLC v. Samsung Electronics America, Inc.*,
   316 F. Supp. 3d 913 (E.D. Va. 2018), *aff'd*, 753 F. App'x 911 (Fed. Cir. 2019)...................11

*Tenaha Licensing LLC v. Tigerconnect, Inc.*,
   No. 19-1400-LPS-SRF, 2020 WL 30426 (D. Del. Jan. 2, 2020)............................18

*Trinity Info Media, LLC v. Covalent, Inc.*,
    72 F.4th 1355 (Fed. Cir. 2023) ....................................................................16

*Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*,
    874 F.3d 1329 (Fed. Cir. 2017)......................................................................6

*Ultramercial, Inc. v. Hulu, LLC*,
    772 F.3d 709 (Fed. Cir. 2014)........................................................................2

**Statutes**

35 U.S.C. § 101 ........................................................................... *passim*

**Rules**

Federal Rule of Civil Procedure 12(b)(6) ............................................ *passim*

## I.      INTRODUCTION

Pursuant to Federal Rule of Civil Procedure 12(b)(6), Defendants Precor Incorporated and Peloton Interactive, Inc. respectfully move to dismiss Plaintiff Lightning Fitness Systems LLC's Complaint asserting infringement of certain claims of U.S. Patent No. 9,818,285 ("the '285 patent") (Ex. A)[1] against Defendants' industry-leading fitness products. The asserted patent claims are ineligible for patenting under 35 U.S.C. § 101 because they are directed to an abstract idea and do not recite any inventive concepts.

The asserted claims are directed to a method or apparatus for receiving sensory information while a user is using an exercise machine. They require collecting sensory information from a user (e.g., pulse or breathing rate) through a sensor (e.g., on-body monitor and/or handlebar sensor), sending a signal from the sensor to a processor to compare the collected information to a default or user-defined set points (e.g., comparing heart rate to standardized heart rate zones), and then presenting this analysis to the user as feedback (e.g., through a visual display) so that the user can adjust the exercise machine (e.g., adjust settings for difficulty). Alternatively, rather than presenting feedback to the user, the information analysis can be used to "control" an exercise machine's settings. In its Complaint, Plaintiff alleges that certain treadmills sold by Defendants infringe at least one claim of the '285 patent.

The '285 patent's claims, however, are ineligible under § 101. At step one of the Supreme Court's *Alice* framework, the asserted claims are directed to the abstract idea of collecting sensory information from a user, analyzing that information, and displaying that information analysis so as to provide feedback to the user. These types of claims have been consistently held ineligible

---

[1] The Complaint also lists U.S. Patent No. 10,454,285 in the heading for Count II. Dkt. 1 ¶ 156. Plaintiff, however, confirmed via e-mail with Defendants that this patent was listed in error and is not asserted.

under § 101 by the Federal Circuit and district courts, citing the Federal Circuit's decision in *Electric Power Group, LLC v. Alstom S.A.*, 830 F.3d 1350 (Fed. Cir. 2016). According to the Federal Circuit, claims reciting the concepts of "collecting," "analyzing," and "displaying" information —such as those recited here—"fall into a familiar class of claims 'directed to' a patent-ineligible concept." *Id.* at 1353.

As to step two, the claims lack any "element or combination of elements that is 'sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the [ineligible concept] itself.'" *Alice Corp. v. CLS Bank Int'l*, 573 U.S. 208, 217-18 (2014) (alteration in original) (citation omitted). The claims here do not "require a new source or type of information" or "new techniques for analyzing [that information]," "do not invoke any assertedly inventive programming," "do not require an arguably inventive set of components or methods," and "do not invoke any assertedly inventive programming." *Elec. Power*, 830 F.3d at 1355. Rather, the claims "merely call for performance of the claimed information collection, analysis, and display functions 'on a set of generic computer components' and display devices." *Id.* (citation omitted).

Resolving eligibility on the pleadings "conserve[s] scarce judicial resources," "provides a bulwark against vexatious infringement suits," and "provide[s] the most efficient and effective tool for clearing the patent thicket, weeding out those patents that stifle innovation." *Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709, 718-19 (Fed. Cir. 2014) (Mayer, J., concurring). The asserted claims are invalid under § 101, and the Complaint should be dismissed with prejudice.

## II.     NATURE AND STAGE OF PROCEEDINGS

On January 5, 2024, Plaintiff Lightning Fitness Systems LLC filed this action against Defendants Precor Incorporated ("Precor") and Peloton Interactive, Inc. ("Peloton"), alleging infringement of claims 1 and 4 of the '285 patent. Dkt. 1. On January 23, 2024, the Court extended

the deadline for Defendants to answer, move, or otherwise respond to the Complaint until May 6, 2024. Dkt. 14. Defendants now respectively move to dismiss this case.

## III.    STATEMENT OF THE FACTS

### A.    Defendants Peloton and Precor Are Leaders in the Fitness Industry

Defendants Precor and Peloton are industry leaders in exercise equipment and interactive fitness. While the "Peloton Tread" Treadmill released more recently in 2018, Precor launched its first full line of treadmills in 1985 and has been releasing innovative exercise equipment ever since. Precor first released its Smart Rate$^{TM}$ heart rate monitoring on a treadmill in 1997—sixteen years before the earliest priority date of the '285 patent—via the C964i treadmill. *See* Ex. B at 2, 44 (showing a release in December 1997).[2]

Using the C964i treadmill, a user can wear a chest strap to measure their heart rate, and that strap transmits a signal to a user interface on the treadmill so that the heart rate can be graphically displayed for user monitoring. This allowed a user to maintain their heart rate within a given zone (e.g., weight loss or cardiovascular). This same treadmill also included an interactive heart rate course, which enabled the treadmill to automatically adjust its incline to keep a user's heart rate within a selected target zone. These features have been included on numerous treadmills since 1997, including Precor's 9.27 Treadmill. The Patent Office was not made aware of these Precor treadmill features during prosecution of the '285 patent.

### B.    The '285 Patent Is Directed to a Method or Apparatus of Receiving Sensory Information While Operating an Exercise Machine

The '285 patent specification's description of the claimed invention differs markedly from what was actually claimed. According to the '285 patent, the alleged invention is "[a] method or

---

[2] The Exhibit B citations refer to the PDF page number.

apparatus specifically designed to allow the user to process information by learning, creating, or being entertained; while moving through coordination, exercise, or physiotherapy; and that aids the user by providing feedback or assistance related to that movement, processing, or any combination thereof; [and] has the potential of being a boon to society." '285 patent at 2:13-19. Plaintiff echoed this description of the claimed invention in its Complaint. Dkt. 1 ¶¶ 16 (describing "a method and apparatus to facilitate learning while moving, including as reflected the '285 Patent"), 25 (explaining "the core essence of the '285 Patent, 'moving while learning,' was materialized"), 88. But this is not what was actually claimed.

Asserted independent claim 1 of the '285 patent is directed to a method for "receiving sensory feedback while moving" by collecting information from a user of an exercise machine (e.g., pulse, brain activity, or sweat), analyzing this information, and then displaying this analysis to a user to provide the user feedback on their use of the exercise device. '285 patent at 6:52-7:12, 8:44-60. Alternatively, although not required, the claim allegedly automates the feedback process by controlling the exercise device in response to the information analysis. Claim 1 is shown below, with the components bolded and the method steps underlined for emphasis:

> A method of receiving sensory feedback while moving involving:
> one or more **sensor relays**;
> any number of **output devices**;
> any number of **movement devices**; and
> one or more **computer processors** that:
> receive a signal from any of the one or more sensor relays, detecting
>     the information related to the user;
> analyze the detected information against one or more default or user
>     defined set points;
> and either:
> send a signal to any of the output devices, instructing the decision
>     maker with feedback related to one or more control factors
>     measured against one or more set points;
> or
> send a signal to any of the movement devices, controlling said
>     movement devices based on said analysis.

*Id.* at 8:44-60. Independent claim 4 recites similar limitations, at least under Plaintiff's own understanding of the claim. *See*, *e.g.*, Dkt. 1 ¶¶ 133-148 (illustrating how the Plaintiff did not distinguish between the independent claims for the purpose of pleading infringement).

Notably, independent claim 1 recites two steps in the alternative, including either (1) "send[ing] a signal to any of the output devices, instructing the decision maker with feedback related to one or more control factors measured against one or more set points;" or (2) "send[ing] a signal to any of the movement devices, controlling said movement devices based on said analysis." Plaintiff describes these two limitations as either providing feedback for a user to adjust a movement device or using the information analysis to automatically control changes to the movement device. *E.g.*, *id.* ¶¶ 79, 102, 112. These two alternatives are always claimed using the term "or" (e.g., claims 1, 4, 5), indicating that either step is sufficient to meet the claim. *See SkinMedica, Inc. v. Histogen Inc.*, 727 F.3d 1187, 1199-200 (Fed. Cir. 2013) ("The disjunctive 'or' plainly designates that a series describes alternatives.").

## IV.     LEGAL STANDARD AS TO 35 U.S.C. § 101

Patent eligibility under § 101 "is a question of law" that "may be, and frequently has been, resolved on a Rule 12(b)(6) . . . motion where the undisputed facts, considered under the standards required by that Rule, require a holding of ineligibility under the substantive standards of law." *SAP Am., Inc. v. InvestPic, LLC*, 898 F.3d 1161, 1166 (Fed. Cir. 2018) (collecting cases).

To determine whether a patent claims an abstract concept, courts engage in the two-step inquiry set forth in *Alice*, 573 U.S. at 217-18. First, courts determine whether the claims at issue are "directed to" an abstract idea. *Id.* at 217. "[S]tep one presents a legal question" only, which "does not require an evaluation of the prior art or facts outside of the intrinsic record." *CardioNet, LLC v. InfoBionic, Inc.*, 955 F.3d 1358, 1372, 1374 (Fed. Cir. 2020). This analysis often begins "with an examination of eligible and ineligible claims of a similar nature from past cases." *Amdocs*

*(Isr.) Ltd. v. Openet Telecom, Inc.*, 841 F.3d 1288, 1295 (Fed. Cir. 2016). "In cases involving software innovations, this inquiry often turns on whether the claims focus on 'the specific asserted improvement in computer capabilities . . . or, instead, on a process that qualifies as an "abstract idea" for which computers are invoked merely as a tool.'" *Finjan, Inc. v. Blue Coat Sys., Inc.*, 879 F.3d 1299, 1303 (Fed. Cir. 2018) (quoting *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1335-36 (Fed. Cir. 2016)).

If the claims are directed to an abstract idea, the inquiry proceeds to step two. At step two, the court determines whether the claim elements, individually or collectively, add "significantly more" to the abstract idea—something "inventive"—that is "sufficient to 'transform' the claimed abstract idea into a patent-eligible application." *Alice*, 573 U.S. at 217-22 (quoting *Mayo Collaborative Servs. v. Prometheus Lab'ys, Inc.*, 566 U.S. 66, 72-73, 79 (2012)); *Intell. Ventures I LLC v. Symantec Corp.*, 838 F.3d 1307, 1322 (Fed. Cir. 2016) (any inventive concept must be "in the claims," not in unclaimed "technological details set forth in the patent's specification"). "Stating an abstract idea 'while adding the words "apply it"' is not enough for patent eligibility. Nor is limiting the use of an abstract idea 'to a particular technological environment.'" *Alice*, 573 U.S. at 223 (first quoting *Mayo*, 566 U.S. at 72; and then quoting *Bilski v. Kappos*, 561 U.S. 593, 610-11 (2010)). Nor can claims simply recite "generic functional language to achieve [the] purported solutions" without claiming "*how* the desired result is achieved." *Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*, 874 F.3d 1329, 1339 (Fed. Cir. 2017) (citation omitted).

Whether an asserted patent is invalid for failure to satisfy § 101 "is a question of law based on underlying facts that may be resolved on a Rule 12(b)(6) motion when the undisputed facts require a holding of ineligibility." *Athena Diagnostics, Inc. v. Mayo Collaborative Servs., LLC*, 915 F.3d 743, 749 (Fed. Cir. 2019) (internal citations omitted). While the step two inventiveness

inquiry may occasionally involve "underlying issues of fact," *Berkheimer v. HP Inc.*, 881 F.3d 1360, 1365 (Fed. Cir. 2018), a factual dispute arises only if the claims themselves capture the alleged inventiveness or are directed to an allegedly inventive concept contained in the specification, *id.* at 1369-70.

## V.    ARGUMENT

### A.    The '285 Patent Is Ineligible Under 35 U.S.C. § 101

The '285 patent's claims are directed to the abstract idea of collecting sensory information from a user, analyzing that information, and displaying that information analysis so as to provide feedback to the user. The claims recite only generic components to carry out this abstract idea and are devoid of any allegedly inventive concept. Plaintiff has not pled any particular inventiveness or unconventionality that would place the '285 patent in a category of patents outside of those addressed by the Federal Circuit in *Electric Power* and its progeny—nor could it, as both the claims and the specification of the asserted patent make clear it is ineligible.

Further, the Federal Circuit has held that where, as here, the patent's claims are substantially similar and are linked to the same abstract idea, a court may focus its analysis on a representative claim. *See, e.g.*, *Cleveland Clinic Found. v. True Health Diagnostics LLC*, 859 F.3d 1352, 1360 (Fed. Cir. 2017); *Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat'l Ass'n*, 776 F.3d 1343, 1348 (Fed. Cir. 2014). Independent claim 1 of the asserted patent can serve as a representative claim of the asserted patents, as all claims of the asserted patents are substantially similar and linked to the same abstract idea.

1. ***Alice* Step One: Claim 1 Is Directed to an Abstract Idea**

    a. **Claim 1 Is Directed to Collecting Information, Analyzing That Information, and Displaying That Information**

Claim 1 can be met through at least the following three steps: (1) "receive a signal from any of the one or more sensor relays, detecting the information related to the user;" (2) "analyze the detected information against one or more default or user defined set points;" and (3) "send a signal to any of the output devices, instructing the decision maker with feedback related to one or more control factors measured against one or more set points."[3] '285 patent at 8:50-60. The asserted claims are thus directed to the abstract idea of collecting sensory information from a user, analyzing that information, and displaying that information analysis so as to provide feedback to the user.

Indeed, this abstract idea is similar to how Plaintiff described its claims in the Complaint, explaining that the asserted claims "permit the providing [of] feedback for improved operation of a movement device . . . *via collecting and receiving sensor data, analyzing sensor data, providing instructions, and/or controlling movement and/or output devices*." Dkt. 1 ¶ 121 (emphasis added). Thus, even Plaintiff acknowledges that the asserted claims are directed to collecting, analyzing, and providing feedback to a user (e.g., by displaying information).

---

[3] As discussed in Section III.B, *supra*, the asserted claims recite that the claimed processor, as an alternative to "instructing the decision maker with feedback," can "send a signal to any of the movement devices, controlling said movement devices based on said analysis." This limitation is not required to meet any claim. But, even if required, using a conventional computer processor to control a movement device (as an alternative to providing feedback for manual control) does not transform the idea into patent-eligible subject matter. *Intell. Ventures I LLC v. Cap. One Bank (USA)*, 792 F.3d 1363, 1370 (Fed. Cir. 2015) ("[M]erely adding computer functionality to increase the speed or efficiency of the process does not confer patent eligibility on an otherwise abstract idea."); *Arunachalam v. Kronos Inc.*, No. 14-cv-00091-RGA, 2021 WL 1174530, at *2 (D. Del. Mar. 29, 2021) (citation omitted). Indeed, the '285 patent fails to explain how such control would be accomplished.

**b. Courts Have Routinely Found That Collecting Information, Analyzing That Information, and Displaying That Information Is an Abstract Idea**

The Federal Circuit has held that claims reciting the concepts of "collecting," "analyzing," and "displaying" information —either individually or collectively—"fall into a familiar class of claims 'directed to' a patent-ineligible concept." *Elec. Power*, 830 F.3d at 1353. In *Electric Power*, the Federal Circuit found that the claims were directed to "a process of gathering and analyzing information of a specified content, then displaying the results, and not any particular assertedly inventive technology for performing those functions." *Id.* at 1354. The asserted claims here are no different. Claim 1 of the '285 patent recites nothing more than collecting "information related to the user," "analyz[ing] the detected information," and "instructing the decision maker with feedback" by displaying the information. The claims simply do not recite "inventive technology for performing those functions." *Id*.

Similar claims have been addressed in numerous Federal Circuit and district court decisions since *Electric Power*, and courts consistently reach the same conclusion: the claims are directed to an abstract idea and, ultimately, to ineligible subject matter. In *CardioNet, LLC v. InfoBionic, Inc.*, the Federal Circuit considered whether claims were directed to a patent-ineligible abstract idea or, as appellant patent owner claimed, "a new data analysis process that improves cardiac monitoring technology by enabling physicians to view heart rate trend data." 816 F. App'x 471, 475 (Fed. Cir. 2020). The Federal Circuit found that "the claims merely recite collecting, analyzing, and displaying cardiac data—quintessential abstract concepts—not any particular technology for performing those functions." *Id.* (citing, in part, *Elec. Power*, 830 F.3d at 1353-54). The Federal Circuit further found that the claims were "not directed to specific methods for [analyzing data]," and the specifications likewise failed to disclose "specific methods" for

analyzing data. *Id.* According to the Federal Circuit, "the claims cannot be said to require anything more than generic data analysis." *Id.* This analysis applies equally to claim 1 of the '285 patent.

Similarly, in *iLife Technologies, Inc. v. Nintendo of America, Inc.*, the Federal Circuit considered a claim reciting "a motion sensor system that evaluates and communicates the relative movement of a body using static and dynamic acceleration information collected from sensors." 839 F. App'x 534, 536-37 (Fed. Cir. 2021). Citing *Electric Power*, the Federal Circuit noted that "[w]e have routinely held that claims directed to gathering and processing data are directed to an abstract idea." *Id.* (citations omitted). The Federal Circuit expressly rejected appellant patent owner's argument that the challenged claim "is not directed to an abstract idea because it recites a physical system that incorporates sensors and improved techniques for using raw sensor data." *Id.* at 537. The Federal Circuit found that the asserted claim "[f]ail[s] to provide any concrete detail for performing the associated functions" and "merely amounts to a system capable of sensing information, processing the collected information, and transmitting processed information." *Id.* at 536. This is, again, similar to claim 1 of the '285 patent.

District courts have likewise reached the same conclusion as to similar claims. For example, in *Philips North America LLC v. Fitbit LLC*, the district court considered a claim that "recites a series of steps comprising gathering data (by 'downloading' an application to a wireless phone, 'coupling' that phone to a device that provides exercise-related data, and 'receiving' data concerning the physiologic status of the subject and the amount of exercise performed by the subject); analyzing that data . . . ; and showing the results . . . ." 626 F. Supp. 3d 292, 301 (D. Mass. 2022) (citation omitted). Again, citing *Electric Power*, the court found that the claim "recites nothing more than the collection, analysis, and presentation of information, which have been found—individually and collectively—to be abstract concepts." *Id.* (citing *Elec. Power*, 830 F.3d

at 1353-54). The court found that the claim "does not recite 'inventive technology for performing those functions.'" *Id.* (quoting *Elec. Power*, 830 F.3d at 1354).

Likewise, in *SmarTEN LLC v. Samsung Electronics America, Inc.*, the district court considered claims directed to "subsystems that collect and store health, food, exercise, and weight data from the user and other sources; step-related data from a pedometer; and location data from a GPS receiver." 316 F. Supp. 3d 913, 922 (E.D. Va. 2018), *aff'd*, 753 F. App'x 911 (Fed. Cir. 2019). According to the court, the claims further describe "how the subsystems can analyze the data to determine, for example, the calories contained in particular foods or burned by particular exercises, to evaluate user performance and the user's weight, and to provide feedback to the user about his progress toward his health goals," including by displaying the data analysis to the user. *Id.* The patent owner argued that the claims were "directed to specific means for improving the claimed mobile weight and exercise management computing device," further citing at least "the inclusion of a pedometer and GPS receiver," and "the display of the user's path in real time using GPS data." *Id.* (citations omitted). The court disagreed that this altered the step one analysis, explaining "that the claims in issue are directed to asserted advances in the uses to which already existing technology, particularly conventional mobile computing devices with built-in GPS receivers and pedometer functions, can be put." *Id.*

Each of these cases considered claims that are similar to the '285 patent's claims: collecting sensory information from a user, analyzing that information, and displaying that information analysis so as to provide feedback to the user. And these cases are only representative. Multiple other courts, including this Court, have reached a similar conclusion when faced with similar claims. *See, e.g.*, *Cambridge Mobile Telematics, Inc. v. Zendrive, Inc.*, No. 22-1260-RGA, 2023 WL 6295338, at *3-4 (D. Del. Sept. 27, 2023); *Mad Dogg Athletics, Inc. v. Peloton Interactive,*

*Inc.*, No. 2:20-CV-00382-JRG, 2021 WL 4206175, at *5-7 (E.D. Tex. Sept. 15, 2021); *Pers. Beasties Grp. LLC v. Nike, Inc.*, 341 F. Supp. 3d 382, 388-89 (S.D.N.Y. 2018), *aff'd*, 792 F. App'x 949 (Fed. Cir. 2020).

**c.    Plaintiff's Contentions in the Complaint Do Not Alter the Analysis**

In the Complaint, Plaintiff contends—in a conclusory fashion—that "the claimed solutions . . . require implementation via specialized, or specially programmed, computers." Dkt. 1 ¶ 121. But nothing in the asserted patent suggests any "improvement in the functioning of a computer." *Enfish*, 822 F.3d at 1338. The purported advance of the '285 patent is collecting information, analyzing information, and displaying that information analysis to provide feedback to a user of a movement device. This improvement is not achieved by improving the claimed "computer processors," but instead through "generalized steps" that are "to be performed on a computer using conventional computer activity." *Id.* at 1338-39.

Plaintiff contends that "prior to the disclosures of the '285 Patent, . . . users of movement devices would need to cease operation of the movement device in order to look at, or otherwise receive, the information from the sensor relays for use as feedback and, once the feedback was received, alter their movement and/or the movement device."[4] Dkt. 1 ¶ 113. But this only illustrates that the claims require functions similar to "those performed by a doctor or a coach— receiving information about a patient's or client's goals, observing and noting whether or not the patient or client behaves in furtherance of those goals, and then addressing the patient or client accordingly," that were found to be abstract. *Pers. Beasties*, 341 F. Supp. 3d at 388. As other courts

---

[4] This is also incorrect. As Precor's C964i manual disclosed in 1997, Percor's "Smart Rate simplifies the correlation between heart rate and exercise. You don't have to stop concentrating on your workout to find your pulse anymore. Smart Rate performs all the calculations for you and displays a graphic image of where you are in your zone." Ex. B at 25.

have explained, "[t]echnological inventions performing a series of steps that could be performed by humans are generally considered abstract ideas." *Id.* The fact that "the system's limitations are directed to helping users improve their behavior does not render it nonabstract." *Id.*

Claim 1 does not focus on a specific physical configuration of sensors and relays to collect or analyze information, recite a novel or specific arrangement of relays and sensors to collect or analyze information, nor capture specific techniques related to inaccuracies of sensors or sensors to collect or analyze information. The claimed steps are instead an example of the "result-focused, functional . . . claim language [that] has been a frequent feature of claims held ineligible under § 101." *Elec. Power*, 830 F.3d at 1356. The claim is not directed to "any particular assertedly inventive technology for performing those functions." *Id.* at 1354. Claim 1 is "therefore directed to an abstract idea." *Id.*

### 2. *Alice* Step Two: Claim 1 Includes No Inventive Concept

Claim 1 does not disclose an inventive concept that elevates the claims to significantly more than its abstract idea. Like the claims in *Electric Power*, claim 1 "do[es] not . . . require a new source or type of information, or new techniques for analyzing it." *Id.* at 1355. The claim "do[es] not require an arguably inventive set of components or methods, such as measurement devices or techniques, that would generate new data." *Id.* And the claim "do[es] not invoke any assertedly inventive programming." *Id.* As the Federal Circuit explained, "[m]erely requiring the selection and manipulation of information—to provide a 'humanly comprehensible' amount of information useful for users—by itself does not transform the otherwise-abstract processes of information collection and analysis." *Id.* (citations omitted).

### a.  Claim 1 Recites Only Conventional Components Used in Routine Ways

Claim 1's invocation of conventional components to accomplish the claimed method steps does not transform the claimed subject matter into patent-eligible subject matter. When the abstract steps of collecting, analyzing, and displaying information are stripped away from claim 1, all that remains are the claimed "sensor relays," "output devices," "movement devices," and "computer processors." And, as discussed below, the specification and Plaintiff both recognize that these claimed "sensor relays," "output devices," "movement devices," or "computer processors" are nothing more than conventional components used in conventional ways. Dkt. 1 ¶ 116.

*Sensor relays*: The '285 patent discloses that the claimed "'sensor relay' refers to . . . any combination of devices including but not limited to sensors (including an audio sensor, a visual sensor, a tactile sensor, a gyroscope, an accelerometer, proximity device, or a magnetometer) and relays for sending information such as sensory information or positional information." '285 patent at 3:57-67. Nothing in the '285 patent suggests that a "sensor relay" is anything more than conventional.

*Output device*: The '285 patent discloses that the claimed "output device is a device that may include a computer processor which receives information from a source" and "may then convert or convey this information . . . to the user or an observer through any of multiple means, including but not limited to headphones, speakers, a visual monitor or by controlling a movement device." *Id.* at 4:19-26. The '285 patent discloses that "[t]he output device may be . . . a media device." *Id.* at 4:26-27. Again, the '285 patent does not suggest that an "output device" is anything more than a conventional component for conveying information to a user.

*Movement device*: The '285 patent discloses that the claimed "movement device may include but is not limited to devices used to facilitate movement or exercise such as a treadmill,

bicycle, cable-row, or elliptical machine." *Id.* at 5:21-23. The claimed "movement device" is thus nothing other than a conventional exercise machine.

**Computer processor**: The '285 patent discloses that the claimed "computer processor is a device which may receive, process, store, or transmit information." *Id.* at 4:1-2. Nothing in the '285 patent suggests that the claimed "computer processor" is anything more than a conventional processor.

Plaintiff acknowledges the conventionality of these components in the Complaint. According to the Plaintiff, "the apparatus, sensor relays, output devices, movement devices, media devices, audio [devices], audio sensors, visual sensors, tactile sensors, and computer processors . . . are physical and/or tangible things *known to a person of ordinary skill in the art* . . . ." Dkt. 1 ¶ 116 (emphasis added). Where, as here, "the specification suggests that the[] components were conventional at the time the patent was filed," reciting these components "is not enough to make the asserted claims patent-eligible at step two." *PlanetID, LLC v. Digify, Inc.*, No. 19-cv-04615-JST, 2021 WL 567371, at *7 (N.D. Cal. Jan. 12, 2021) (citing *Elec. Power*, 830 F.3d at 1355). As in *Electric Power*, "[n]othing in the claims, understood in light of the specification, requires anything other than off-the-shelf, conventional computer, network, and display technology for gathering, sending, and presenting the desired information." 830 F.3d at 1355.

> **b.      Plaintiff's Contentions in the Complaint Do Not Alter the Analysis**

In the Complaint, Plaintiff contends that "the claimed solutions could not be done manually." Dkt. 1 ¶ 121. But this does not alter the analysis. As the Federal Circuit has held, "merely adding computer functionality to increase the speed or efficiency of the process does not confer patent eligibility on an otherwise abstract idea." *Intell. Ventures*, 792 F.3d at 1370. And this

is the novelty that Plaintiff ascribes to the claimed invention. *See* Dkt. 1 ¶ 113 (describing manual prior art solutions).

Finally, while Plaintiff's Complaint alleges that the asserted claims recite "a non-conventional and non-generic arrangement of communications between user equipment, intermediate servers, and destination data servers that is a technical improvement to the communications between these devices as operated in a conventional manner," *id.* ¶ 127, Plaintiff offers no support for these bare statements. And there is no support for this assertion in the specification. A "district court need not accept a patent owner's conclusory allegations of inventiveness." *Int'l Bus. Machs. Corp. v. Zillow Grp., Inc.*, 50 F.4th 1371, 1379 (Fed. Cir. 2022); *see also Simio, LLC v. FlexSim Software Prods., Inc.*, 983 F.3d 1353, 1365 (Fed. Cir. 2020) ("We disregard conclusory statements when evaluating a complaint under Rule 12(b)(6)."); *Trinity Info Media, LLC v. Covalent, Inc.*, 72 F.4th 1355, 1365-66 (Fed. Cir. 2023) (noting, in affirming the district court's grant of a Rule 12(b)(6) motion alleging ineligibility under § 101, that "conclusory allegations that the prior art lacked elements of the asserted claims are insufficient to demonstrate an inventive concept"). Claim 1 is thus not patent eligible under § 101.

### 3. The Other Claims of the '285 Patent Are Likewise Ineligible

Much like the representative claim discussed above, the other independent claim and all dependent claims are "substantially similar in that they recite little more than the same abstract idea." *Content Extraction*, 776 F.3d at 1348. These claims rely on conventional components or functionality and fail to transform the abstract idea into more. While certain claims "may have a narrower scope than the representative claims, no claim contains an 'inventive concept' that transforms the corresponding claim into a patent-eligible application of the otherwise ineligible abstract idea." *Id.* at 1349, 1351 (affirming grant of motion to dismiss under Rule 12(b)(6) on the ground that the claims of the asserted patents were invalid as patent ineligible under § 101).

For example, the remaining claims require "wherein the user controls, is educated by, or is entertained by a media device" (claim 2); "a moving walkway in a room for use by multiple users" (claims 3 and 7); "allow[ing] the user to alter the media device" (claim 8); "a straight treadmill" (claim 11); "a circular treadmill" (claims 12 and 17); "a treadmill that uses a combination of solar power and battery power to maintain a default speed" (claims 13 and 18); "a standard treadmill" (claim 16); or other variations of these elements and those recited in independent claim 1 (claims 4-6, 9, 10, 14, and 15). None of the claims "require any nonconventional computer, network, or display components, or even a 'non-conventional and non-generic arrangement of known, conventional pieces'"; instead, the claims "merely call for performance of the claimed information collection, analysis, and display functions 'on a set of generic computer components' and display devices." *Elec. Power*, 830 F.3d at 1355 (citation omitted).

The remaining claims are ineligible where, as here, "all the claims are 'substantially similar and linked to the same abstract idea.'" *Content Extraction*, 776 F.3d at 1348 (citation omitted). Whether taken alone or in combination, these limitations do not provide significantly more than the abstract idea. Accordingly, as each of the claims lacks an inventive concept, no amendment of the Complaint can save Plaintiff's claims from a finding of ineligibility under § 101. Accordingly, dismissal with prejudice under Rule 12(b)(6) is proper.

**B.     Amendment to the Complaint Would Be Futile**

Granting leave to amend the Complaint would be futile because the abstract idea at step one and lack of inventive features at step two are supported by the intrinsic record and Plaintiff's own statements in the Complaint. *See Cleveland Clinic Found. v. True Health Diagnostics LLC*, 760 F. App'x 1013, 1019-20 (Fed. Cir. 2019) (rejecting patent owner's contention that "remand is warranted . . . [i]n view of [the Federal Circuit's] conclusion that the specification and prosecution history are clear that the claimed method uses a known technique in a standard way to observe a

natural law"). Further amendment to the Complaint would only enable Plaintiff to contradict this controlling record. *See Tenaha Licensing LLC v. Tigerconnect, Inc.*, No. 19-1400-LPS-SRF, 2020 WL 30426, at *9 (D. Del. Jan. 2, 2020) (agreeing that "granting leave to amend would be futile here because the specification affirmatively contradicts Plaintiff's arguments regarding 'specific improvements' at step one and 'inventive features' at step two"). Thus, "[b]ecause the patent is directed to subject matter that is not patent eligible as a matter of law, leave to amend would be futile." *Peoplechart Corp. v. Wintrust Bank, N.A.*, 543 F. Supp. 3d 594, 604 (N.D. Ill. 2021).

## VI.     CONCLUSION

The '285 patent's claims are invalid under § 101 as a matter of law. Accordingly, Defendants respectfully request that the Court dismiss Plaintiff's Complaint with prejudice under Rule 12(b)(6) of the Federal Rules of Civil Procedure.

OF COUNSEL:
Benjamin A. Saidman
FINNEGAN, HENDERSON, FARABOW,
  GARRETT & DUNNER LLP
271 17th Street, NW, Suite 1400
Atlanta, GA 30363
(404) 653-6510

Anand K. Sharma
FINNEGAN, HENDERSON, FARABOW,
  GARRETT & DUNNER LLP
901 New York Avenue, NW
Washington, DC  20001-4413
(202) 408-4000

Deanna C. Smiley
FINNEGAN, HENDERSON, FARABOW,
  GARRETT & DUNNER LLP
1875 Explorer Street, Suite 800
Reston, VA  20190-6023
(571) 203-2700

Dated: May 6, 2024

/s/ Lindsey M. Gellar
Karen E. Keller (No. 4489)
Lindsey M. Gellar (No. 7202)
SHAW KELLER LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 298-0700
kkeller@shawkeller.com
lgellar@shawkeller.com
*Attorneys for Defendants Precor
Incorporated and Peloton Interactive,
Inc.*