IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

LIGHTNING FITNESS SYSTEMS LLC,

    Plaintiff,

v.

PRECOR INCORPORATED, and
PELOTON INTERACTIVE
INCORPORATED,

    Defendants.

Civil Action No. 24-00012-RGA

MEMORANDUM OPINION

Antranig N. Garibian, GARIBIAN LAW OFFICES, P.C., Wilmington, DE; Shea N. Palavan, Sugouri S. Batra, HOUSTON IP, Houston, TX,

    Attorneys for Plaintiff.

Karen Elizabeth Keller, Lindsey Michelle Gellar, SHAW KELLER LLP, Wilmington, DE; Anand K. Sharma, FINNEGAN, HENDERSON, FARABOW, GARRETT & DUNNER LLP, Washington, DC; Benjamin A. Saidman, FINNEGAN, HENDERSON, FARABOW, GARRETT & DUNNER LLP, Atlanta, GA; Deanna C. Smiley, FINNEGAN, HENDERSON, FARABOW, GARRETT & DUNNER LLP, Reston, VA,

    Attorneys for Defendants.

February 18, 2025

1

ANDREWS, U.S. DISTRICT JUDGE:

Before me is Defendants' motion to dismiss Plaintiff's complaint for failure to state a claim. (D.I. 17). I have reviewed the parties' briefing. (D.I. 18, 22, 24). The complaint is 103 pages long. But quantity and quality are not necessarily correlated. For the reasons set forth below, Defendants' motion is GRANTED as to all claims.

## I. BACKGROUND

Plaintiff Lightning Fitness Systems brought this suit against Defendants Precor and Peloton. Plaintiff asserts patent infringement of "at least" claims 1 and 4 of U.S. Patent No. 9,818,285 ("the '285 patent"). (D.I. 1 at 47 ¶ 137).[1] Defendants move to dismiss Plaintiff's complaint (*id.*), arguing that the asserted claims of the '285 patent are invalid for lack of patentable subject matter under 35 U.S.C. § 101. (D.I. 17; D.I. 18 at 1).

Plaintiff Lightning Fitness is the holder of the intellectual property created by Forward Entertainment & Technology ("FEAT"). (D.I. 1 at 6 ¶ 16). One of the inventors of the '285 patent, James Clarke, founded FEAT to develop "innovative technologies related to cognitive improvement." (*Id.* at 5 ¶ 16). Defendants Precor and Peloton are "industry leaders in exercise equipment and interactive fitness." (D.I. 18 at 3).

The USPTO issued the '285 patent in November 2017. (D.I. 1 at 10 ¶ 30; '285 patent). It appears to have a priority date of March 2013. (D.I. 1 at 10 ¶ 30; '285 patent). The '285 patent, titled "Method and Apparatus for Moving While Receiving Information," is directed to a system with which "users conduc[t] tasks such as learning, working, creating on a computer or other device, or being engaged in a simulation all while moving and outputting sensory

---

[1] Notwithstanding the way the complaint pleads the asserted claims, Plaintiff does not argue that that only claims 1 and 4 should be at issue. (D.I. 22 at 6 ¶ 15).

information related to those tasks, their movement, or both to one or more devices." ('285 patent at 1:1–2, 2:24–29). Plaintiff is the assignee of all substantial rights to the '285 patent. (D.I. 1 at 67–68 ¶ 157).

The patent has two independent claims, claim 1 and claim 4, which state:

1. A method of receiving sensory feedback while moving involving:
    one or more sensor relays;
    any number of output devices;
    any number of movement devices; and
    one or more computer processors that:
    receive a signal from any of the one or more sensor relays, detecting the information related to the user;
    analyze the detected information against one or more default or user defined set points;
    and either:
    send a signal to any of the output devices, instructing the decision maker with feedback related to one or more control factors measured against one or more set points;
    or
    send a signal to any of the movement devices, controlling said movement devices based on said analysis.

('285 patent at 8:44–60).

4. An apparatus comprising:
    one or more sensor relays;
    and either:
    one or more output devices;
    or
    one or more movement devices;
    wherein said sensor relay may detect information related to one or more user control factors;
    and
    wherein said sensor relay may send one or more signals to one or more other sensor relays, output devices or movement devices;
    said output devices translating and communicating said signals to a decision maker as measured against one or more default or user defined set points;
    or
    said other sensor relays detecting information related to the user and sending a signal to any of the one or more other sensor relays, output devices, or movement devices, or relaying the signal sent to it, to one or more other

>sensor relays, output devices, or movement devices measured against one or more default or user defined set points.

('285 patent at 8:65–9:23).

Defendants argue that claim 1 is representative because "the patent's claims are substantially similar and are linked to the same abstract idea" and that additional "conventional components or functionality" in the dependent claims "fail to transform the abstract idea into something more." (D.I. 18 at 7, 16–17; D.I. 24 at 2). Plaintiff denies that claim 1 is representative, citing additional limitations present in the other claims, including "a battery, a headset, [and] a treadmill." (D.I. 22 at 6). Plaintiff also distinguishes between the "computer processor" in claim 1 and the "sensor relays" in claim 4 and notes that claim 1 is a method claim, while claim 4 is an apparatus claim. (*Id.*).

"Analyzing representative claims is proper" when claims "are substantially similar and linked to the same [abstract idea]." *Cleveland Clinic Found. v. True Health Diagnostics LLC*, 859 F.3d 1352, 1360 (Fed. Cir. 2017) (citing *Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat'l Ass'n*, 776 F.3d 1343, 1348 (Fed. Cir. 2014)). Courts "may treat a claim as representative . . . if the patentee does not present any meaningful argument for the distinctive significance of any claim limitations not found in the representative claim[.]" *Mobile Acuity Ltd. v. Blippar Ltd.*, 110 F.4th 1280, 1290 (Fed. Cir. 2024) (quoting *Berkheimer v. HP Inc.*, 881 F.3d 1360, 1365 (Fed. Cir. 2018)). "The patent challenger who identifies a claim as representative of a group of claims bears the initial burden to make a prima facie showing that the group of claims [is] substantially similar and linked to the same ineligible concept." *Id.* (internal citation omitted). "Once this occurs, the burden shifts to the patent owner to present non-frivolous arguments as to why the eligibility of the identified representative claim cannot fairly be treated as decisive of the eligibility of all claims in the group." *Id.*

I find that Defendants have met their prima facie burden and that Plaintiff presents only frivolous arguments as to why claim 1 is not representative of the remainder of the patent claims. It is true that claim 4 does not recite a "processor," but it does claim communicating the signal to a "decision maker" ('285 patent at 9:11), which the specification describes as "any user or observer," who may "alter the movement device's settings." ('285 patent at 7:6–8). Instead of a computer processor making the decision to change the device settings, claim 4 appears to contemplate either changes made by a human using the device, or automatic changes based on previously defined "set points"—essentially a decision made in advance. ('285 patent at 9:10–15). Furthermore, claim 4 is a "comprising" claim, meaning it encompasses embodiments with additional elements. ('285 patent at 8:65). Claim 5 is the same as claim 4, but with the addition of one or more processors doing what they do in claim 1. ('285 patent at 9:24–38). Claim 10 is the same as claim 4, but with both an output device and a movement device (instead of in the alternative). ('285 patent at 10:15–19). Likewise, claim 6 is the same as claim 5, but with both an output device and a movement device. ('285 patent at 9:39–43). Claims 2, 3, 7, 8, 9, 11, 12, 13, 14, 15, 16, 17, and 18 are merely variations on the above, but with limitations adding different kinds of treadmills, a "media device," or a "headset." ('285 patent at 8:61–64, 9:44–10:14, 10:20–46).

Regardless of the mechanism—computer processor, human decision maker, or sensor relay—claims 1, 4 and their dependent claims are directed to the idea of collecting data, analyzing it, then communicating the data and/or using the analysis to make changes to the settings of a movement device. Treadmills, media devices, and headsets are easily understood, conventional components. Recitation of different types, sizes, and shapes of treadmill does not

change this analysis. Accordingly, I will treat claim 1 as representative of all claims in the '285 patent.

## II. LEGAL STANDARD

### A. Motion to Dismiss

The Federal Rules require a complainant to provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The Rules allow the accused party to bring a motion to dismiss the claim for failing to meet this standard. Fed. R. Civ. P 12(b)(6). A Rule 12(b)(6) motion may be granted only if, accepting the well-pleaded allegations in the complaint as true and viewing them in the light most favorable to the complainant, a court concludes that those allegations "could not raise a claim of entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558 (2007).

"Though 'detailed factual allegations' are not required, a complaint must do more than simply provide 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action.'" *Davis v. Abington Mem'l Hosp.*, 765 F.3d 236, 241 (3d Cir. 2014) (quoting *Twombly*, 550 U.S. at 555). I am "not required to credit bald assertions or legal conclusions improperly alleged in the complaint." *In re Rockefeller Ctr. Props., Inc. Sec. Litig.*, 311 F.3d 198, 216 (3d Cir. 2002). A complaint may not be dismissed, however, "for imperfect statement of the legal theory supporting the claim asserted." *Johnson v. City of Shelby*, 574 U.S. 10, 11 (2014).

A complainant must plead facts sufficient to show that a claim has "substantive plausibility." *Id.* at 12. That plausibility must be found on the face of the complaint. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Deciding whether a claim is plausible is a "context-specific

6

task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

### B. Patent-Eligible Subject Matter

Patentability under 35 U.S.C. § 101 is a threshold legal issue. *Bilski v. Kappos*, 561 U.S. 593, 602 (2010). Accordingly, the section 101 inquiry is properly raised at the pleading stage if it is apparent from the face of the patent that the asserted claims are not directed to eligible subject matter. *See Cleveland Clinic Found.*, 859 F.3d at 1360. The inquiry is appropriate at this stage "only when there are no factual allegations that, taken as true, prevent resolving the eligibility question as a matter of law." *Aatrix Software, Inc. v. Green Shades Software, Inc.*, 882 F.3d 1121, 1125 (Fed. Cir. 2018).

Section 101 of the Patent Act defines patent-eligible subject matter. It provides: "Whoever invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof, may obtain a patent therefor, subject to the conditions and requirements of this title." 35 U.S.C. § 101. The Supreme Court recognizes three categories of subject matter that are not eligible for patents—laws of nature, natural phenomena, and abstract ideas. *Alice Corp. v. CLS Bank Int'l*, 573 U.S. 208, 216 (2014). The purpose of these exceptions is to protect the "basic tools of scientific and technological work." *Mayo Collaborative Servs. v. Prometheus Lab'ys, Inc.*, 566 U.S. 66, 71 (2012) (citation omitted). "Method[s] of organizing human activity," steps that can be "performed by humans without a computer," and "analyzing information by steps people go through in their minds" have been recognized as categories of abstract ideas. *Alice*, 573 U.S. at 220, 222; *Mortg. Grader, Inc. v. First Choice Loan Servs.*, 811 F.3d 1314, 1324 (Fed. Cir. 2016); *Elec. Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350, 1354 (Fed. Cir. 2016).

7

In *Alice*, the Supreme Court reaffirmed the framework laid out in *Mayo* "for distinguishing patents that claim laws of nature, natural phenomena, and abstract ideas from those that claim patent-eligible applications of those concepts." *Alice*, 573 U.S. at 217. The framework is a two-step process. *Id.*

At step one, I must decide whether the claims are drawn to a patent-ineligible concept. *Id.* I determine whether the "focus" of the claims is "a specific means or method that improves the relevant technology" or rather is "directed to a result or effect that itself is the abstract idea." *Contour IP Holding LLC v. GoPro, Inc.*, 113 F.4th 1373, 1379 (Fed. Cir. 2024) (cleaned up) (citing *McRO, Inc. v. Bandai Namco Games Am. Inc.*, 837 F.3d 1299, 1314 (Fed. Cir. 2016)); *see Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1335–36 (Fed. Cir. 2016). At this step, "the claims are considered in their entirety to ascertain whether their character as a whole is directed to excluded subject matter." *McRO*, 837 F.3d at 1312 (quoting *Internet Pats. Corp. v. Active Network, Inc.*, 790 F.3d 1343, 1346 (Fed. Cir. 2015)). If the claims are not directed to, or focused on, a patent-ineligible concept, then the inquiry ends, and the claims are not ineligible under section 101. *Id.* If the claims are directed to a patent-ineligible concept, I proceed to step two. *Id.*

At step two, I "scrutinize the claim elements more microscopically[.]" *Elec. Power Grp.*, 830 F.3d at 1354. I must look to "the elements of [the] claim both individually and as an ordered combination" to see if there is an "inventive concept—*i.e.*, an element or combination of elements that is sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the ineligible concept itself." *Alice*, 573 U.S. at 217–18 (cleaned up). "A claim that recites an abstract idea must include additional features to ensure that the claim is more than a drafting effort designed to monopolize the abstract idea." *Id.* at 221 (cleaned up).

Further, "the prohibition against patenting abstract ideas cannot be circumvented by attempting to limit the use of [the idea] to a particular technological environment." *Id.* at 222 (alteration in original) (quoting *Bilski*, 561 U.S. at 610). Thus, neither "the mere recitation of a generic computer" nor "vague, functional descriptions of server components" can render an abstract idea into a patentable invention. *Id.* at 223; *TLI Commc'ns LLC v. AV Auto., L.L.C. (In re TLI Commc'ns LLC Pat. Litig.)*, 823 F.3d 607, 615 (Fed. Cir. 2016). Likewise, limiting the invention to a particular field does not suffice to confer patentability. *See Elec. Power Grp.*, 830 F.3d at 1354 (finding that limiting claims to the "particular technological environment of power-grid monitoring" was insufficient alone to render abstract idea patentable).

## III. DISCUSSION

### A. *Alice* Step One

Defendants argue that claim 1 of the '285 patent "recites nothing more than collecting information related to the user, analyzing the detected information, and instructing the decision maker with feedback by displaying the information."[2] (D.I. 18 at 9 (cleaned up)). Defendants

---

[2] Defendants' proposed abstract idea only captures the first of two alternatives in claim 1 separated by an "or." ('285 patent at 8:58). However, the final step of claim 1 is alternatively "send a signal to any of the output devices, instructing the decision maker with feedback" (*i.e.* "displaying the information") or "send a signal to any of the movement devices, controlling said movement devices based on said analysis." ('285 patent at 8:55–60).
  I am not aware of a case that has addressed alternative claim language in the Section 101 context. But claim interpretation principles typically dictate that when one of a set of claimed alternatives is invalid, the entire claim is invalid. *See, e.g., Brown v. 3M*, 265 F.3d 1349, 1351 (Fed. Cir. 2001) ("When a claim covers several structures or compositions . . . as alternatives, the claim is deemed anticipated if any of the structures or compositions within the scope of the claim is known in the prior art."); *In re Theresa*, 720 F. App'x 634, 638 (Fed. Cir. 2018) (upholding PTAB's determination of obviousness when claim alternative "use of predetermined words" was present in prior art even if alternative of "symbols" was not).
  Regardless, both alternatives claimed in claim 1 are directed to the same abstract idea discussed below: "collecting information related to the user, analyzing the detected information, and providing feedback to the user based on that analysis."

9

also argue that the claims require functions performable by a human being, *i.e.* "a doctor or a coach." (D.I. 18 at 12 (citing *Pers. Beasties Grp. LLC v. Nike, Inc.*, 341 F. Supp. 3d 382, 388 (S.D.N.Y. 2018))). Defendants contend that claim 1 does not recite "a novel or specific arrangement of relays and sensors" or "specific techniques related to inaccuracies of sensors." (*Id.* at 13). Therefore, Defendants argue that the claim language is "result-focused" and "functional," and does not recite "any particular assertedly inventive technology for performing those functions." (*Id.* (quoting *Elec. Power Grp.*, 830 F.3d at 1354, 1356)).

Plaintiff counters that the focus of the claims is an improvement of technology and "actual use of the information beyond simply displaying" it. (D.I. 22 at 10–11). Specifically, Plaintiff points to the "feedback loop for adjusting other devices" present in the claims of the '285 patent. (*Id.* at 8). Plaintiff denies that the claimed steps could be "performed manually by humans or in their head[s]" because that would require humans to communicate telepathically with machines, which humans cannot yet do. (*Id.* at 7). Plaintiff argues that the elimination of a need for a third party, like a coach or trainer, to adjust the movement device while the user is in motion "goes beyond 'merely adding computer functionality to increase speed or efficiency.'" (*Id.* at 8 (quoting *Intell. Ventures I LLC v. Cap. One Bank (USA)*, 792 F.3d 1363, 1370 (Fed. Cir. 2015))).

Plaintiff appears to further contend that the claims are not directed to an abstract idea because they "contain several concrete, tangible elements" and that the "sensor relays," "output devices," "movement devices" and "computer processors" recited in claims 1 and 4 are "non-generic and non-conventional." (*Id.* at 6, 9).

I agree with Defendants that claim 1 is directed to an abstract idea: collecting information related to the user, analyzing the detected information, and providing feedback to the user based on that analysis.

Despite Plaintiff's arguments to the contrary, the claims in *CardioNet LLC v. InfoBionic, Inc.*, cited by Plaintiff, provide an illustrative comparison to claim 1 of the '285 patent. 955 F.3d 1358, 1365–66 (Fed. Cir. 2020); (D.I. 22 at 10). The claims in *CardioNet* were directed to a cardiac monitoring device that "analyz[ed] the beat-to-beat timing for atrial fibrillation or atrial flutter while also taking into account the variability in beat-to-beat timing caused by premature ventricular beats." *CardioNet*, 955 F.3d at 1366. This capability allowed the device to more accurately detect and distinguish between different types of arrythmias. *Id.* The Federal Circuit reasoned that the patent's claims were not abstract at *Alice* step 1 because they were "focus[ed] on a specific means or method that improves cardiac monitoring technology" and were not "directed to a result or effect that itself is the abstract idea," "merely invok[ing] generic processes and machinery." *Id.* at 1368 (cleaned up) (citing *McRO*, 837 F.3d at 1314).

Claim 1 of the '285 patent, in contrast, is not "focus[ed] on a specific means or method" of improving movement devices. *McRO*, 837 F.3d at 1314. Claim 1 discloses (1) computer processors "receiving" information; (2) "analyz[ing]" the information against "set points"; and either (3) providing feedback based on that information to the user on an "output device"; or (4) controlling a "movement device" based on the analysis. ('285 patent at 8:49–60).

Claims that disclose "collecting information, analyzing it, and displaying certain results of the collection and analysis"—(1), (2), and (3) above—are frequently found to be directed to a patent-ineligible concept. *Elec. Power Grp.*, 830 F.3d at 1353. Plaintiff asserts that the "feedback loop" of (4) is "essential to the claimed inventions" and that "the specification has

11

'much more to do with the delivery [and use] of information than the presentation of information[.]'" (D.I. 22 at 13, 16 (citing *Groove Digit. v. Jam City*, 2019 WL 351254, at *3 (D. Del. Jan. 29, 2019))). Putting aside the fact that (4) is an optional alternative in claim 1, neither the claims nor the specification provide a "specific means or method" for how (4) is accomplished. *McRO*, 837 F.3d at 1314; (*see* '285 patent at 2:51 ("the movement device may respond accordingly"), 5:24–26 ("sensor relays or computer processors may direct the movement device to alter its settings"), 6:33–35 ("a computer processor . . . analyzes the signal and may send a signal to the movement device to alter the user's velocity"), 7:10–12 ("a signal to the movement device would cause said device to automatically adjust its settings")). The focus of the claims is a result—"change the settings according to analysis"—and the patent provides no "specific means or method" for doing so. *See McRO*, 837 F.3d at 1314.

Moreover, as Plaintiff notes in the complaint, at the time of invention, the conventional way to provide feedback was to have the user or a third party continuously monitor sensor data and adjust a movement device accordingly to keep the user aligned with specified criteria. (D.I. 1 at 19–20 ¶ 78). Coaches or doctors may provide verbal feedback to a client or patient, but they also may provide feedback by adjusting the settings on a treadmill in response to a user's heavy breathing or amount of sweat. In this sense, claim 1 is similar to the "user-interactive behavioral modification system" claimed in *Personal Beasties*, in which a cartoon character "change[d] appearance based on the user's inputs and on the information subsequently collected and analyzed by the system." 341 F. Supp. 3d at 388. The court in *Personal Beasties* found that the claim was directed to an abstract idea at step one when the functions claimed "reflect[ed] those performed by a doctor or a coach—receiving information about a patient's or client's goals,

observing and noting whether or not the patient[ ]or client behaves in furtherance of those goals, and then addressing the patient or client accordingly." *Id.*

"Method[s] of organizing human activity," steps that can be "performed by humans without a computer," and "analyzing information by steps people go through in their minds" are all abstract ideas. *Alice*, 573 U.S. at 220; *Mortg. Grader*, 811 F.3d at 1324; *Elec. Power Grp.*, 830 F.3d at 1354. Claim 1 of the '285 patent is directed to the automation of a human activity using a computer. The claim provides no identifiable improvement in the functioning of conventional components or otherwise changes how they usually operate. Instead, it "abstractly covers results without regard to a specific process or machinery for achieving those results." *Contour IP*, 113 F.4th at 1379 (cleaned up) (citing *McRO*, 837 F.3d at 1314). Therefore, I find that, when viewed as a whole, the system in claim 1 is directed to the abstract idea of collecting information related to the user, analyzing the detected information, and providing feedback to the user based on that analysis.

### B. *Alice* Step Two

At step two, I examine the claim limitations "both individually and as an ordered combination" to determine whether the claims disclose an "inventive concept sufficient to transform the claimed abstract idea into a patent-eligible application." *Alice*, 573 U.S. at 217, 221 (cleaned up). If a claim is directed to an abstract idea at step one, to be patentable at step two the claim "must include additional features" that "must be more than well-understood, routine, conventional activity." *Ultramercial Inc. v. Hulu, LLC*, 772 F.3d 709, 715 (Fed. Cir. 2014) (internal quotation marks omitted) (citing *Mayo*, 566 U.S. at 77, 79).

Much of the analysis at step one carries over to step two. As the Federal Circuit stated in *In re Killian*:

13

> We have explained that claims for methods that improve an existing technological process include an inventive concept at step two. And claims that recite a specific, discrete implementation of the abstract idea rather than preempting all ways of achieving an abstract idea using a computer may include an inventive concept. But claims to an abstract idea implemented on generic computer components, without providing a specific technical solution beyond simply using generic computer concepts in a conventional way do not pass muster at step two. Neither attempting to limit the use of the idea to a particular technological environment nor a wholly generic computer implementation is sufficient.

45 F.4th 1373, 1382–83 (Fed. Cir. 2022) (cleaned up) (internal citations omitted).

Plaintiff asserts that the elements or combinations of elements in the claims are "unconventional." (D.I. 22 at 15). Plaintiff also states without much explanation that the "user defined set points" provide an "inventive concept," as does the "feedback loop," and that the claims are "directed to an improvement in computer and related technology, itself, and not directed to generic components performing conventional activities." (*Id.* at 16).

The "sensor relays," "computer processors," and "output devices" disclosed in claim 1 are generic computer components performing in conventional ways. The claims do not recite an unconventional arrangement of components or means of performing the claimed activity. Further, the inclusion of "movement devices" in claim 1 only serves to "limit the use of [the abstract idea] to a particular technological environment." *Alice*, 573 U.S. at 222 (quoting *Bilski*, 561 U.S. at 610). Coaches and doctors conventionally monitor the vitals of clients and patients while they exercise on a treadmill, analyze that information, and either provide feedback or adjust the treadmill accordingly. Claim 1 automates this activity so that it can be done without the involvement of a third party. "An inventive concept cannot simply be an instruction to implement or apply the abstract idea on a computer." *Univ. of Fla. Rsch. Found., Inc. v. Gen. Elec. Co.*, 916 F.3d 1363, 1369 (Fed. Cir. 2019) (cleaned up) (quoting *Bascom Glob. Internet Servs., Inc. v. AT&T Mobility LLC*, 827 F.3d 1341, 1349 (Fed. Cir. 2016)).

Therefore, applying the *Alice* two-step framework, I find that representative claim 1 of the '285 patent is (1) directed to an abstract idea; and (2) fails to recite an inventive concept that would transform it into a patentable application of that idea. *Alice*, 573 U.S. at 217–18. All claims are accordingly directed to unpatentable subject matter under section 101. Lightning Fitness's complaint (D.I. 1) is **DISMISSED**.

Plaintiff requested leave to amend the complaint if I dismissed it. (D.I. 22 at 20). Plaintiff does not give any hint as to what it might add in an amended complaint. Nevertheless, if Plaintiff thinks that more allegations in the complaint might make a difference, Plaintiff may file a motion to amend the complaint, compliant with D. Del. LR 15.1, and a supporting brief, so long as it does so within three weeks of the issuance of this memorandum opinion.

## IV.   CONCLUSION

An appropriate order will issue.